Thank you very much. Benjamin Casper Sanchez for the petitioner, and I'm honoured to be introducing Kay Lajoie, who is appearing under the court's student practice rule. She'll be arguing the full case today for the petitioner. I do want to acknowledge Allison Mitchell, who is also a law student who has been helping in the preparation for oral argument. She's with us at Council's table today, along with Mike DePrince, our former student. I just want to thank Respondents' Council for their gracious willingness to agree to the student's participation. Very well. Thank you. Thank you all for your work on the case, and Ms. Hull, we'll hear from you. Good morning, Your Honours. May it please the Court, Kay Lajoie for the petitioner. Make sure you keep the microphone close enough. You might have lowered it a bit too much, but however you do it, just make sure you speak into the microphone so we can hear you. Yes, Your Honour. Again, Kay Lajoie for the petitioner, Mr. Tua Mene Lebie Bakor. And Your Honours, while there are two statutory crimes at issue in this case, unless the Court desires otherwise, we will focus on the Minnesota Regulatory Statute, Section 243.166. This statute is categorically overbroad on its face by its very text and in actual application here in the state of Minnesota with regards to the federal definition of a crime involving moral turpitude. For this reason, the Court should reverse the Board of Immigration Appeals. This Court could also reverse at more than one level because of the particular characteristics of the Minnesota statute, this Court could reverse even without overturning the Board of Immigration Appeals decision in matter of tobar lobo, which involved a separate California statute. Or, in the alternative, this Court could reverse the Board of Immigration Appeals because the reasoning in that split panel decision of matter of tobar lobo with respect to the California statute and similar registration statutes is otherwise wrong and the circuit courts to have ruled on matter of tobar lobo have all been correct to reject it. Now, Your Honours, the very text of the Minnesota statute is on its face, overbroad, as to one of the two elements of the federal definition of a crime involving moral turpitude. The federal definition, as outlined by the Board of Immigration Appeals and as understood by this Court, involves two elements, both a mens rea, a culpable mental state, and an actus reus, an act that is inherently vile, base, moral, or contrary to the norms of accepted society. On its very text, this Minnesota statute is overbroad as to the actus reus element. This statute encompasses not only convictions, as the California statute did in matter of tobar lobo, but it also encompasses individuals who are merely charged and even acquitted of those charges. And those individuals are then still required to register under this statute, as we see in this Court's decision in Gunderson. So you're focusing on the reason why someone needs to register as opposed to the elements of the registration requirement itself? Your Honour, we're focusing on both. We're saying at a high level, when you look at the individuals who must register, it is both individuals who are charged and convicted of some of the enumerated offenses. That is one reason the statute is overbroad. It is also overbroad because of the technical bureaucratic elements that a violation would create. So an individual may violate this statute, for example, if they fail to register the color of the car that they regularly drive, or if they fail to provide one of the many telephone numbers that he or she may have. It's your position that this case does not present to us a CIMT? Is that what you're saying? Exactly, Your Honour. We are saying that categorically the Minnesota registration statute is overbroad on its very face, based on the very text of the statute. In order to be a CIMT, the conduct has to be malum in se, not malum prohibitum. This is a classic example of a malum prohibitum statute. And we should void the statute that you're talking about? You should not. We are not asking you to void the statute. A violation of this statute is still a crime in Minnesota. That just didn't happen here. Is that what you're arguing? We're arguing that for immigration purposes, when you look at the separate civil proceedings that take place in immigration court, that while it is a crime, not all crimes are morally turpitudinous. The Immigration and Nationality Act specifically says an individual is deportable if they have committed an individual who is a lawful permanent resident, as is the case here, is deportable only if they have committed two crimes involving moral turpitude. Not two crimes, but crimes involving moral turpitude. And so what this court is tasked with understanding is whether this statute is inherently categorically encompassing conduct that is purely turpitudinous. What's your authority that a malum prohibitum statute cannot be turpitudinous? Your Honor, this court, in Gomez-Gutierrez, adopts the Board of Immigration Appeals definition of a crime involving moral turpitude, which says that it is malum in se conduct, not malum prohibitum conduct, that is morally turpitudinous. And the Board of Immigration Appeals has made that distinction in numerous cases, which this circuit has adopted. Well, the Board obviously doesn't adhere to that view now, because they've said that a registration violation is turpitudinous. And the Board, in matter of Tobar-Lobo, has said that this conduct is malum in se conduct, which is what we are contesting and what four circuit courts have also found is not the case. That is the heart of this issue, Your Honors. And four circuit courts have actually agreed that the very conduct of registration statutes, and specifically the Minnesota statute, which reaches perhaps even more broadly than all other registration statutes because of the individuals who are required to register, shows that this conduct is not malum in se. Indeed, it is malum prohibitum. It is conduct that is inherently bureaucratic, technical. And as I was saying, there are very technical regulations that individuals must comply with in order to not violate this statute. Weren't some of the other courts worried, though, about the mens rea in the state statutes at issue in those cases and that a person could be convicted simply for forgetting to register without committing a knowing violation at the time of the failure to register? Your Honor makes a wonderful point that in matter of Tobar-Lobo, the Board of Immigration Appeals held that forgetfulness is enough to be a mens rea under the statute. And that reasoning was rejected by the four sister circuits. But hasn't Minnesota said forgetfulness is not enough to be convicted? In Mikaluk, the Minnesota Supreme Court case, they held that a knowing violation must occur, but because of that an individual has a defense of not understanding the technical violations. In that case, the individual knew that he had a duty to register but thought that he had seven days instead of 24 hours within the period that he had to register. And so the individual understood his duty, but it is again an example of how technical this statute is. And he was charged with a violation of this statute because he violated one of the very technical registration requirements. But do you agree that Minnesota has eliminated the forgetfulness, culpability for forgetfulness? Mikaluk doesn't actually say that it eliminates culpability for forgetfulness. That is something the dissent points out. But the opinion itself does not say it eliminates forgetfulness. It simply says that ignorance of the law is an affirmative defense, an affirmative defense that happens on the back end. But, Your Honors, I would like to point out that in order to be a crime involving moral turpitude, categorically there are two elements that must be met, both the mens rea and the actus reus. If we look to matter of Tobar Lobo, they show the Board of Immigration Appeals has found forgetfulness to be a sufficiently culpable mens rea, something that this Court and the Board of Immigration Appeals has rarely held before. But we are also looking at the actus reus element. And when you look at that separate element, the acts that would actually violate this statute are not inherently base or vile. Putting aside that Minnesota may have a broader scope of people who may have to register, putting that aside for purposes of this question, the Board seemed to focus on the purpose behind the registration and that there are really strong societal reasons why we have decided that we want certain folks to register, everything from their car to their address to their employment. Why is that not a part of the analysis? Your Honors, when we look at who is required to register, the Board of Immigration Appeals in matter of Tobar Lobo was looking at convicted offenders. And I know you asked me to put aside the fact that individuals who are charged. Putting aside that, the Minnesota carve out there. Yes. When we look at other similar registration statutes, all registration statutes have an underlying purpose of protecting the public or in the case of Minnesota, making the jobs of law enforcement easier, which is the stated purpose according to Minnesota case law for this statute. Things like licensing statutes. So it is a crime to fail to carry your Minnesota driver's license every single time you drive. And the purpose of that statute is to make law enforcement officers' jobs easier and to protect the public from unsafe individuals on the roads. But driving without a license each and every time you drive is not inherently morally turpitudinous conduct. And the Board of Immigration Appeals has time and time again said that registration statutes and regulatory statutes such as this one are not morally turpitudinous conduct. So in those cases, has the Board looked behind the purpose for the registration statute like they did in this one and said, well, the reason we want the license is sort of a simple example. But do they look behind and say, well, this is why we want this type of person to register and that's why it's an important statute? They have not, Your Honor, and I would like to save five minutes for a rebuttal, but I would like to quickly answer your question as well. They have not looked at that. And indeed, in matter of Tobar-Lobo, the cases that the Board compared to show this underlying purpose were cases where an individual had committed statutory rape or child abuse. Things where there was an inherent violation and harm to a person. A harm that isn't present with this statute and that is very different in kind from a violation of a registration statute. So as the sister circuits have outlined, those cases simply just do not compare to a violation of a registration statute with a purpose to assist law enforcement. And, Your Honors, I'd be happy to continue answering questions on my rebuttal. Very well. We'll hear from Dr. Zadie for the respondent. That can be raised on the right. Not that tall. Good morning, Your Honors, and may it please the Court. Imran Zadie for the Attorney General. This case addresses two Minnesota convictions and whether they constitute crimes involving moral turpitude or CIMTs. Now, the first is a violation of Minnesota's predator registration statute and the second a conviction for fifth degree criminal sexual conduct. Now, like Petitioner, I plan to focus primarily on the predator registration statute and then if subject, of course, to this panel's questions and then if time permits, I'll have just a few basic points on the criminal sexual conduct offense. Now, on the predator registration statute, I want to clarify the question for the Court. We have a published board decision in matter of Tobar-Lobo, which has said that violating predator registration statutes is categorically a CIMT. Petitioner does not dispute that that decision is entitled to Chevron deference. Petitioner also does not dispute that under matter of Tobar-Lobo, his Minnesota conviction would be a CIMT. Does the Chevron deference, we defer to the board's definition of a CIMT. Do we also defer to the board's interpretation of state law? No, Your Honor, you don't. And so the deference in the context of CIMT, in the context of the categorical approach is a bit complicated, but not too much. You defer to the board's definition. You don't defer, you don't, definition of CIMT. You do not defer to the board's construction of the elements of the state statute or state law, but obviously that comparison necessarily involves defining the scope of the definition of a CIMT. Now, so the question, the clear question, the only question for this Court, or the base question for this Court is, is matter of Tobar-Lobo a permissible construction of the phrase CIMT? Now, I have two quick answers to that question, but then I'd like to unpack them a bit. The first is, yes, matter of Tobar-Lobo is a permissible construction of the statute. But second, even if this Court doesn't fully accept matter of Tobar-Lobo's reasoning, the Minnesota conviction here, the registration conviction here, is still categorically turpitudinous because of the state's heightened and stricter mens rea requirement of a knowing violation. Can I distinguish the other circuits that I've rejected? It absolutely does, Your Honor. It absolutely does. Three of those without question, basically leaving every circuit except for the fourth. So the Third Circuit decision, of course, addressed this very same statute, but just misread it completely, and Petitioner does not dispute that. Minnesota read, excuse me, the Third Circuit, and Thotime addressing the Minnesota statute misread it as encompassing mere forgetfulness, and it simply does not. The Ninth and Tenth Circuits addressing the Nevada and Colorado predator registration statutes respectively, those statutes both had no mens rea requirement. They're both strict liability offenses, and that's something that both the Ninth and Tenth Circuits focused on very heavily in rejecting matter of Tobar-Lobo and finding that it did not dictate the outcome there because a CIMT's baseline definition is reprehensible conduct and culpable mental state. And so the Ninth and Tenth Circuits focused on that lack of a mens rea in those statutes in saying that it was not turpitudinous. Now, in matter of Tobar-Lobo itself, the board concluded that it focused on the significance of these predator registration statutes in protecting children and other vulnerable populations from sex offenders who are particularly prone to recidivism. The board ultimately concluded that some obligations are simply too important not to heed. Now, the California statute at issue in matter of Tobar-Lobo required a willful violation, but one of the issues that distinguishes Tobar-Lobo from here as well is that the California courts had construed willful to include even mere forgetfulness. So that's, again, something the Ninth and Tenth Circuits have focused on when distinguishing matter of Tobar-Lobo or rejecting its reasoning, that it did not include a sufficient culpable mental state to be turpitudinous. And then the only circuit decision remaining is the Fourth Circuit's decision in Muhammad, which doesn't really offer that much additional analysis. It sort of broadly echoes the rationales of the other decisions, even though it had a statute in Virginia in that case that did have a knowing violation. But Muhammad didn't look to state interpretations of that knowing violation and didn't, in that respect, choose to focus on the mens rea requirement or provide any analysis on that point. One of the things that Muhammad and, and that's the Fourth Circuit case again, and the Ninth and Tenth Circuit cases have focused on is the regulatory offense principle. Now, very simply on this, the general principle that regulatory offenses are not considered CIMTs is just that, a general principle. There are already exceptions to that principle. DUIs, for instance, are considered regulatory offenses. They are usually not considered CIMTs, but in certain circumstances they will be, such as, for instance, with a sufficient mens rea requirement. So if a DUI includes knowledge of underlying illegality, so a DUI with knowledge of driving on a suspended license, that is considered a CIMT. Here, it makes perfect sense for the board to have distinguished between failing to register your vehicle or failing to structure a financial transaction a certain way from offenses like failing to report yourself as a sexual predator. And this is exactly why the general principle of regulatory offenses should not and does not dictate the outcome here. They're different things. But if you look at the purpose behind it and what you're trying to protect in society, and we understand what that goal is for a registration, but like the structuring of a financial transaction, well, we know what that's trying to protect as well. Right. And that is something that society wants to protect against. What's the difference? Is there going to be anything else, in other words, like protection of children under a sex offender registry that will result in a registration requirement being a CIMT? I mean, that's obviously a question for the board to address. When it does, it's not. Well, I'm asking you if this is sort of just so unusual, as your argument that this is so unusual, the purpose behind this, that it's different than trying to protect against unlawful financial transactions that may have some quite significant criminal activity behind it. Sure. But that this is different. So help me understand sort of where this one falls if there is a continuum or if it's just a special case. Well, again, Your Honor, and I don't mean to say to sort of preserve the board's deference, but there may be future situations that come up. I think what is unique about a predator registration statute is nobody disputes the sort of heinousness of the underlying conduct and the vulnerability of the populations who are targeted. Nobody also disputes, and this might be maybe the most distinguishing feature, is how prone those types of offenders are to recidivism. So you have a uniquely bad offense, the underlying offense, uniquely heinous offense, and then you have somebody who's particularly prone to recidivism. You combine those two factors together, and then, again, in this case, you don't just have that conduct, and, again, the conduct is the failure to register. You also have the mens rea requirement in Minnesota of knowingly violating that statutory requirement. And we talk about the recidivism and the vulnerable folks that we're trying to protect, and I feel like we're kind of that's sort of all understood. But in another statute, would we have to have some kind of legislative purpose behind the statute to understand why that registration requirement is in place? For example, in Minnesota, I think they say it's to assist law enforcement. But what you've argued is adding additional purposes behind it. What's our role there? What's the BIA's role? What's our role in determining what we think the purpose behind a registration statute is? Well, so two things, Your Honor. First, I just want to clarify. So the Minnesota statute's purpose is to assist law enforcement, but that's not so that is the stated purpose, but that is not distinguishable from the matter of Tobar-Lobo. The assisting law enforcement has both the assisting law enforcement purpose in terms of just generally keeping tabs on people and surveillance and being able to use them as investigatory tools. It also does serve the deterrent purpose. I mean, part of the reason for these Megan's Laws is to allow police to, while keeping surveillance on people, in theory it is supposed to deter conduct when somebody knows that they're constantly under surveillance and their cars and their addresses are being registered. So that goes to the public safety. Now, to your point about what the Board might need to look to in the future, the legislative history will certainly be helpful. It's not the only thing, certainly. I think you are looking for some indication that a type of reporting requirement or a licensing requirement has some type of particularly reprehensible conduct involved that violating that requirement would. And again, DUIs already sort of evinces that very same purpose. And I don't know in the Ninth Circuit case in Mar-a-Lago's campus when they addressed that or the Board decision in Lopez Mesa what they focused on for DUIs if there was legislative history at issue there. But I think it does not only need to be legislative history, but there can be and should be some other indication of why doing this particular thing that has been categorized as regulatory is bad enough to be a CIMT. I also... Mr. Zadie, would you like to address the BACOR's argument that the Minnesota statute goes beyond convictions and encompasses registration for people who haven't been convicted, maybe were just charged and acquitted or dismissed, and whether that's significant or relevant? Right. Yes, Your Honor. First, I'd like to point out this. None of this was presented to the Board. So these issues... Not exhausted? It's not properly exhausted. We recognize we're talking about CIMT definition. This is a legal issue, but we are also talking about whether that falls under the Board's definition of CIMT. So this is sort of directly within the Board's expertise, and this is something that should have been brought up to the Board before, and there's no question that it was not. If we agreed with you on that, though, how would we write an opinion? Would we say that we're only deciding this on the assumption that the Minnesota statute is narrower than what it really is? I mean, how do you write an opinion? I don't. I understand the exhaustion, but you should have said to the Board, we think Minnesota statute's different than other states and is broader, and that's important, but you didn't say that, so the Board may have just been assuming that the Minnesota statute... Was the same. Yeah. Right, and so... But if we write an opinion that says the Minnesota statute categorically counts, then can some future alien raise this point that wasn't exhausted? Sure. We make that clear in the opinion that it's still open? Right. So I don't think, and I'll get to this in a moment, I don't think that the merits of that, sort of the scope of the Minnesota statute changed the ballgame here. But as to your point about exhaustion, I think if this panel finds it problematic enough, then regardless of exhaustion, it can remand to the Board because it thinks that that's something the Board is entitled to weigh in on in the first instance, notwithstanding the fact that it was not exhausted. So if this panel finds it is problematic, I don't think that it is. The arising out of the same set of circumstances requirement has been interpreted by Minnesota law to include, has been interpreted very narrowly to include and require the original charge for the sort of qualifying predatory offense to arise out of the same set of circumstances as the ultimate conviction. Minnesota has construed that to be the same time, location, facts, basic persons, a very tight nucleus of circumstances that surely does cast a wider net, but I don't think it's a much wider net. And Minnesota's done this because they want people to not be able to benefit from favorable plea agreements and to plead their way out of registration requirements. And this Court has already recognized that interest. This Court has also said that this is a minimal burden here and that it has recognized the state legislature's interest in drawing their statute that way, including those people who are just charged but not necessarily convicted. One point I'd like to raise about the Tenth Circuit in particular is that when we talk about why this case and this statute is distinguishable from not only a matter of toe by lobo but from the other circuits that have addressed it, Judge O'Brien in the Tenth Circuit sort of bridged that gap in concurring and saying that he would have come out differently. And again, that Colorado statute was a strict liability offense, no mens rea requirement. And Judge O'Brien specifically said, had this statute included a more, what he called malignant intent, he would have considered the crime to be turpitudinous. And he focused on what he said was the dangers of sexual predators and how these predator registration statutes drive them out of what he called the tangles in the tall grasses out into the open. And in doing so, empowers parents and guardians in protecting the most vulnerable of our kind. So that analysis does a very nice job of sort of connecting what you might find to be or what other courts have found to be deficient in a matter of toe by lobo to a statute like what we have before us here, which requires, without question, a knowing violation of the statute. Now, and I haven't had much time to talk about that specific point, it's about the Minnesota interpretation of the knowledge requirement. There's no question that under, I'm not sure how you pronounce it, McCulloch, the Minnesota Supreme Court decision, it is knowledge at the time of the violation. And it's not clear at all. Petitioner raises the point that until McCulloch, it was that the statute encompassed unknowing conduct. There is absolutely no support for that claim. McCulloch simply clarifies what the statute already says with regard to a knowing violation. And I also want to clarify, and we can file, we'll file a 28-J letter about this, one of the Minnesota Supreme Court has issued a decision now in the Alarcone case, which both respondent and petitioner cited in our briefs, to clarify exactly how strict that knowledge requirement is. And this decision just came out last month or two months ago. We had cited it for the principle that somebody having left their hotel room who is required to register had left their hotel room and was convicted because they had not updated their primary residence. Because once you abandon your primary residence for 24 hours, under the statute you need to notify authorities. This individual had, as his primary residence, a hotel, left the hotel. The credit card that he had been using apparently got rejected and the owner of the hotel put a boot on his room and I think put his stuff outside the room. It was never entirely clear that the individual knew that he had abandoned the hotel because he had not come back. The Minnesota Court of Appeals upheld the conviction saying, based on all the circumstantial evidence, and there was no question, by the way, that he was aware of the registration requirement itself and the primary residence requirement. The Court of Appeals said this is enough for a conviction. It's clear that he knew of the requirement and that by having left the hotel for this amount of time that he had abandoned his residence. The Minnesota Supreme Court just overturned that and said even that is not good enough for a conviction. So you need to have knowledge of the violation, meaning both knowledge of the statute itself and knowledge that your conduct falls short of that statutory requirement. So, thank you, Your Honor. Thank you for your argument. We'll hear from Ms. Hull and Rebella. Thank you, Your Honors. In the Tenth Circuit concurrence that the government just referenced, Judge O'Brien makes a distinction between knowing conduct and between malicious conduct. In the Tenth Circuit case itself, they assume that knowing was the required mens rea under the Colorado statute, which is the same mens rea as the government just conceded that is here in Minnesota. Therefore, the concurrence actually shows how a general intent statute such as ours is different than a specific intent statute, which is what Judge O'Brien in the concurrence was very concerned with. I don't know about that. He says the problem with Colorado is it treats conduct ranging from merely negligent to intentional to malicious as the same. I don't think it was limited to knowledge. His concern was that it went all the way down to mere negligence. In the decision itself, they assume that knowledge was the mens rea element within the Colorado statute. You were talking about the concurring opinion. And the concurring opinion concurred in that decision, both in terms of the mens rea element and the actus reus element. Well, all right. We'll look at it. But the council says it was a strict liability statute, and the concurrence says it went down to negligence. And the decision actually showed that they assumed that knowledge was the appropriate element in that statute. We would also dispute that the Third Circuit case in matter of totem was misread. In that case, the understanding of Minnesota courts at the time was that forgetfulness may be enough for conviction. That actually was shown in the McAluke case itself, where McAluke was convicted of not knowing that he had 24 hours to register and instead thinking he had seven days to register. That case itself shows that before McAluke, forgetfulness was the standard. So totem out was. . . Well, it shows that the district court there got it wrong. I don't know if it shows that it was the standard. It shows that individuals were indeed convicted under the statute. And when we look at the minimum conduct for what an individual was. . . What do you mean individuals? It shows McAluke was convicted, but his conviction was reversed because the lower court had gotten it wrong. Correct. But it shows that individuals were initially convicted. And so it shows that at the time of the totem decision, the Third Circuit had a correct understanding of the men's riot here in Minnesota as it was being applied in the state of Minnesota, which is why the Supreme Court needed to clarify the men's riot in McAluke. Petitioner would also disagree with the government in terms of the individuals who are encompassed by this statute. The government says that all individuals who are convicted under the statute have an underlying morally turpitudinous conviction. That is simply not true. As we've proved in our reply brief, there are individuals who may be charged with a predatory offense and then ultimately be convicted of an offense that is not a CIMT. In our brief, we showed that to be Minnesota simple assault, which courts, including this one, have categorically shown are not crimes involving moral turpitude. This is important because the touch . . . I thought simple assault sometimes was and sometimes wasn't. Is that wrong? The understanding of the BIA and this court is that fifth-degree simple assault is not a CIMT because it has general intent, not specific intent. So the touchstone, again, is a conviction and the statutory elements. If you look at the statutory elements here, both in terms of mens rea but also in terms of actus reus, this statute is categorically overbroad, and the government does not dispute that this court would have to create a circuit split in order to affirm the underlying decision that the Board of Immigration Appeals has submitted here. Very well. Thank you for your argument. We appreciate the . . .